IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| VLADMIR LTD., | § | |
| *Plaintiff*, | § § § | |
| v. | § § | Civil Action No. SA-08-CV-819-XR |
| PACIFIC PARTS SUPPLY CO., INC., and DELMER E. ROGAIR, | § § § § | |
| *Defendants*. | § § | |

**ORDER ON MOTIONS FOR SUMMARY JUDGMENT**

On this day, the Court considered Defendants' Motions for Partial Summary Judgment (Docket Entry Nos. 51, 52, 53) and the Errata in relation to one of Defendants' motions (Docket Entry No. 54). Having reviewed the Motions, the errata, Plaintiff's responses,[1] Defendants' replies, and the evidence provided, the Court GRANTS IN PART AND DENIES IN PART Defendants' motions for partial summary judgment.

**Background**

Plaintiff, Vladmir Ltd., is a Texas limited partnership with offices located in San Antonio,

---

[1] The Local Rules of the Western District of Texas do not provide for filings beyond a reply to a response to a motion. *See* Local Rule CV-7 (W.D. Tex.). The courtroom policies declare that the Court will accept briefing on a motion beyond the response and reply provided that a motion for leave is ordered. Fact Sheet for Judge Xavier Rodriguez, Civil Case no. 32, http://www.txwd.uscourts.gov/general/judges/docs/sanantonio/rodriguez.pdf (accessed October 28, 2009). Plaintiff filed a sur-reply to Defendants' replies but did not file a motion for leave of the Court to present its sur-reply to Defendants' reply memorandums. Defendant did not object. The Court notes that the sur-reply is a summary of the arguments Plaintiff provided in its responses to Defendants motions. As a result, it was unnecessary for the Court to rely on Plaintiff's sur-reply in rendering this order.

1

Texas. Defendant Delmer E. Roghair is a California resident and the President of Defendant Pacific Parts Sales Co., Inc. (incorrectly identified as Pacific Parts Supply Co., Inc.), a California corporation. Vladmir, a HVAC component distributor, intended to establish a business relationship to obtain certain motor-run air conditioning capacitors for sale in the HVAC replacement market. Vladmir's Vice President, Bob Alexander, contacted Delmer Roghair in late 2004 or early 2005 and inquired as to Pacific's ability to provide Vladmir with the capacitors. The parties formed a business relationship in which Plaintiff would order capacitors that Defendants would acquire from a Chinese manufacturer. Vladmir contends that during telephone conversations and a meeting held in San Antonio, Texas, Defendants represented that they could locate a manufacturer in China that could produce a capacitor that would meet certain specifications, that they were agents of the manufacturer, and that the capacitors were oil filled. (Pl.'s 3d Am. Compl. ¶ 5 (Oct. 27, 2009) [Docket Entry No. 73] ("Compl.").) Based on these alleged representations, Vladmir claims it ordered over one million capacitors and affixed to them Vladmir's name and sold them to air conditioning wholesalers in the United States. (*Id.*)

Vladmir began to distribute the capacitors and then began to receive a large number of customer complaints regarding capacitor failures. Subsequently, Vladmir retained American Radionics, a capacitor manufacturer, to perform industry-specific tests on the capacitors provided by Pacific. Vladmir claims the testing revealed that the products were not oil-filled as Roghair claimed, but instead were filled with paraffin wax. Furthermore, Vladmir claims that the capacitors did not meet industry life-expectancy tests.

Vladmir then requested that the Defendants accept a return of all the capacitors and to provide new capacitors manufactured to specifications. The Defendants refused to accept the return

2

but represented that a second shipment of capacitors, already en route to Vladmir, would conform to specifications. Pacific contends that the cause of the failure from the first shipment was not determined and that it agreed to replace the verified failed capacitors or give Vladmir credit for verified failed units. Vladmir tested the second shipment upon receipt and determined that they were not manufactured according to specifications. Plaintiff refused to accept a third shipment of capacitors from Pacific. Vladmir claims that Defendants never spoke with the manufacturer and had no control over the entity that manufactured the capacitors.

Vladmir filed suit against Pacific Parts and Roghair, alleging: (1) breach of contract, (2) common law fraud and fraudulent inducement, (3) negligent misrepresentation, (4) violations of the Texas Deceptive Trade Practices Act, (5) breach of warranty, (6) revocation of acceptance, and (7) alter ego. Pacific filed a counterclaim against Vladmir for breach of contract. On September 10, 2009, Roghair and Pacific filed three motions for partial summary judgment on Vladmir's claims of fraud and fraudulent inducement, negligent misrepresentation, and violations of the Texas Deceptive Trade Practices Act. Plaintiff responded to the motions and Defendants have replied.

**Legal Standard**

Summary judgment is appropriate if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56. The burden is on the moving party to show that "there is an absence of evidence to support the nonmoving party's case." *Freeman v. Tex. Dep't of Crim. Justice*, 369 F.3d 854, 860 (5th Cir. 2004) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Once the moving party meets its initial burden, the nonmoving party "must . . . set out specific facts showing a genuine issue for trial." FED.

3

R. Civ. P. 56(e). A fact is material only "if its resolution could affect the outcome of the action." *Wyatt v. Hunt Plywood Co., Inc.*, 297 F.3d 405, 409 (5th Cir. 2002). The Court reviews all facts in the light most favorable to the non moving party. *Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 308 (5th Cir. 2004).

**Analysis**

The Court evaluates each of Defendants' motions for partial summary judgment on the claims of fraud, negligent misrepresentation, and violations of the Texas Deceptive Trade Practices Act.

*A. Fraud*

Defendants move the Court to grant summary judgment on Plaintiff's claims for fraud and fraudulent inducement. (Def.s' Mot. for Summ. J. on Pl.'s Fraud Counts (Sept. 10, 2009) [Docket Entry No. 51] ("Fraud Mot.").) Pacific and Roghair argue that Vladmir presents no evidence that Defendants knew any representations were false when made or that Defendants intended those representations to induce Vladmir to enter into a contractual relationship. Vladmir responds that Defendants represented that (a) they had factories in China, (b) Pacific was an agent of the manufacturer, (c) Roghair would be in direct contact with the manufacturer, (d) Roghair had knowledge and experience selling capacitors, (e) the capacitors would rival U.S.-made capacitors, and (f) that they would function properly. (Pl.'s Resp. to Daffiest' Mot. for Summ. J. on Pl.'s Fraud Counts 3 (Sept. 24, 2009) [Docket Entry No. 57] ("Fraud Resp.").)

To succeed on a claim for fraud, a plaintiff must show the following: "(1) a material misrepresentation; (2) that is false; (3) made with knowledge of its falsity or recklessness as to its truth; (4) made with the intention that it should be acted upon by another party; (5) relied upon by

4

the other party, and (6) causing injury." *Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200, 212 (5th Cir. 2009); *see also In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 758 (Tex. 2001). A statement is "material" if the information is that which a reasonable person would attach importance to and would be induced to act on in determining his choice of actions in the transaction in question. *Citizens Nat'l Bank v. Allen Rae Investments, Inc.*, 142 SW.3d 459, 478–79 (Tex. App.—Fort Worth 2004, no pet.).

Vladmir states that Defendants claimed that Pacific Parts "had factories in China." (Fraud Resp. at 5.) Vladmir was seeking a company that would allow it to compete with the prices of capacitors manufactured in China. Dep. of Bob Alexander 73:9–74:7 (Sept. 24, 2009) (Fraud Resp. ex. B). Given Vladmir's intention, the Court can ascertain that the comment was material to Vladmir's decision to contract with Pacific since having "factories in China" would allow Vladmir to compete with the prices of Chinese-made capacitors. To constitute fraud, the statement must be false. Here, Plaintiff cannot establish that the statement is false. Vladmir recognized that this comment did not mean that Pacific controlled the manufacturers. In his deposition, Vladmir's representative states that Pacific "is an outsourcing company." Alexander Dep. 89:21–90:13 (Reply ex. 2). Pacific utilized Chinese manufacturers and supplied the capacitors to Vladmir from a Chinese manufacturer. This statement not being false, Vladmir cannot establish a claim for fraud or fraudulent inducement based on this statement.

Vladmir states that Defendants claimed that Pacific Parts "was an agent of the manufacturer." (Fraud Resp. at 5.) Here, Plaintiff does not point to any statement by Defendants in which they assert that they represent a particular factory in China. Also, as previously noted, Plaintiff recognized Vladmir as an outsourcing company. In his deposition, Vladmir's representative

5

acknowledged: "[Pacific] was an outsourcing company . . . . And that's the way that I looked at him. And some people might refer to him as an agent, some people as a broker. Everybody puts their own twist to it. He was an outsourcing company that we dealt with." Alexander Dep. 89:23–90:3 (Reply ex. 2). Vladmir is unable to prove that this claim forms the basis for a fraud claim.

Vladmir further alleges that Defendants claimed that the capacitor would rival any U.S.-made capacitor. (Fraud Resp. at 5.) Plaintiffs provide no evidence that the statement was made with knowledge of its falsity or recklessness as to its truth. Roghair's subjective belief that the capacitors would rival any U.S.-made capacitor cannot be transformed into an affirmative representation. To determine if such a statement constitutes an affirmative representation, "[t]he decisive test . . . is whether the seller asserts a fact of which the buyer is ignorant or merely states an opinion or judgment on a matter of which the seller has no special knowledge and on which the buyer may be expected also to have an opinion and to exercise his judgment." *Steptoe v. True*, 38 S.W.3d 213, 218 (Tex. App.—Houston [14th Dist.] 2001, no pet.) (quoting *Autohaus, Inc. v. Aguilar*, 794 S.W.2d 459, 463 (Tex. App.—Dallas 1990), *writ denied*, 800 S.W.2d 853 (Tex.1991) (per curiam)) (internal quotation marks omitted). Here, Roghair's statement merely reflects an opinion on the quality of the product. Standing alone, it does not constitute an affirmative representation. If Roghair had superior knowledge on the technical aspects of capacitors, then Vladmir could attempt to maintain its action against Defendants. "When a speaker purports to have special knowledge of the facts, or does have superior knowledge of the facts—for example, when the facts underlying the opinion are not equally available to both parties—a party may maintain a fraud action." *Paull v. Capital Resource Mgmt., Inc.*, 987 S.W.2d 214, 219 (Tex. App.—Austin 1999, pet. denied). However, as noted, Roghair had no technical training on the operation of capacitors. Dep. of Delmer E. Roghair

6

14:20–22 (Feb. 24, 2009) (Resp. ex. C). As a result, Plaintiff cannot prove a claim for fraud based on this alleged statement.

Plaintiff includes the statement that Roghair had "knowledge of and had experience selling capacitors." (Resp. at 5.) The evidence cited by Plaintiff, however, shows this statement to be true. Although Roghair had no technical training on the operation of capacitors, Roghair states that he began importing capacitors from South Korea in 1990. Roghair Dep. 15:7–9. Even though Roghair testifies that he has not imported capacitors from China until he did so for Vladmir, Vladmir clearly had knowledge of and experience selling capacitors. Consequently, Vladmir cannot rely on this statement as a misrepresentation.[2]

Vladmir alleges that Roghair stated he was going to be in direct contact with the manufacturer and that the capacitors would function properly. (Resp. at 5.) Vladmir, through this suit, contends that the capacitors did not function properly and has provided evidence which could make this representation false. Aff. of Shaun Sirotiak ¶ 4 (Sept. 23, 2009) (Fraud Resp. ex. F). Moreover, in his affidavit, Vladmir's Vice President of Sales states that Mr. Roghair represented that he would be in direct contact with the manufacturer in China regarding the products. *Id.* ¶ 3. In his testimony, Mr. Roghair states that he had never dealt with the manufacturer in China before and that he only spoke to the manufacturer's agent. Roghair Dep. 15:10–16; 36:18–20. Not having a relationship with the manufacturer, Plaintiff can argue that Roghair's statement about direct contact with the manufacturer was false. Plaintiff clearly sought to obtain capacitors that could compete with the prices of Chinese products. In his affidavit, Vladmir's Vice President states that had

---

[2]Plaintiff does not allege that Roghair's "knowledge of" capacitors provided him with the "special knowledge" to render his opinions about capacitors actionable misrepresentations.

7

Defendants not made these representations, Plaintiff would not have engaged in business with Pacific. *Id.* ¶ 6. Moreover, he declares that Vladmir sustained damages by customers who returned the product, lost profits, inventory, and repackaging costs. While it is unclear whether Defendants made the representations with the intention that Vladmir would rely upon them, a trier-of-fact could determine this given the company's financial motivations. Based on the available evidence, a material issue of fact exists as to whether the statements that 1) Pacific was in direct contact with a Chinese manufacturer and/or 2) that the capacitors would function properly constitute a claim of fraud.

A claim for fraudulent inducement shares the same elements of fraud except that the parties entered into a contract as a result of the false representations. *See Haase v. Glazner*, 62 S.W.3d 795, 798 (Tex. 2001). Here, there is no dispute that a contract for the sale of goods exists between the companies. There being a question of material fact as to whether the statements that 1) Pacific was in direct contact with a Chinese manufacturer and/or 2) that the capacitors would function properly constitute a claim of fraud, these comments may form the basis for a claim of fraudulent inducement.

Based on the aforementioned analysis, the Court grants Defendants' motion as it pertains to Plaintiff's claims for fraud on the statements that Defendants had factories in China, Defendant was an agent of the manufacturer, Roghair had knowledge of and experience selling capacitors, and that the capacitors would rival any U.S.-made capacitor. The Court must deny Defendants' motion for summary judgment on Plaintiff's fraud claims based on the statements that Roghair would be in direct contact with the manufacturer and that the capacitors would function properly.

B. *Negligent Misrepresentation*

Defendants move the Court to grant summary judgment on Plaintiff's claims for negligent

misrepresentation. (Daffiest' Mot. for Partial Summ. J. on Pl.'s Claim for Negligent Misrepresentation [Docket Entry No. 52] ("Negligent Misrepresentation Mot.").) They argue that for two years, Vladmir received capacitors without complaint. (*Id.* at 2.) Pacific and Roghair state that the evidence shows that Defendants provided Plaintiff with capacitors that met Vladmir's requirements. (*Id.* at 3.) As in its response to the Defendants' motion for summary judgment on fraud claims, Vladmir responds that Defendants represented that (a) they had factories in China, (b) Pacific was an agent of the manufacturer, (c) Roghair would be in direct contact with the manufacturer, (d) Roghair had knowledge and experience selling capacitors, (e) the capacitors would rival a U.S.-made capacitor, and (f) that they would function properly. (Pl.'s Resp. to Daffiest' Mot. for Summ. J. on Pl.'s Claim for Negligent Misrepresentation 3 (Sept. 24, 2009) [Docket Entry No. 57] ("Negligent Misrepresentation Resp.").)

> To prove a claim for negligent misrepresentation, a plaintiff must show:
>
> (1) the defendant, in the course of his business or in a transaction in which he had an interest; (2) supplied false information for the guidance of others; (3) without exercising reasonable care or competence in communicating the information; (4) the plaintiff justifiably relied on the information; (5) proximately causing the plaintiff's injury.

*Spethmann v. Anderson*, 171 S.W.3d 680, 689 n.3 (Tex. App.—Dallas 2005, no pet.). A defendant can be held liable for negligent misrepresentation if it makes the representation in the course of its business. *See McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests*, 991 S.W.2d 787, 791 (Tex. 1999).

Here, Vladmir is unable to establish a claim for negligent misrepresentation as it applies to the following alleged representations: that Pacific had factories in China, that Pacific was an agent of the manufacturer, that Roghair had knowledge and experience selling capacitors, and that the

9

capacitors would rival a U.S.-made capacitor. The analysis provided in the preceding section explains why these statements do not constitute actionable misrepresentations. *See supra* Part A.

Issues remain, however, as to whether two alleged statements constitute actionable misrepresentations: that Roghair would be in direct contact with the manufacturer and that the capacitors would function properly. Plaintiff has established, via Mr. Roghair's testimony, that he was not in direct contact with the manufacturer. A question of fact remains as to whether the capacitors functioned properly. Defendants argue that Vladmir provided Pacific with "UL810 requirements which it has alleged to be the industry standard . . . [and t]here is no evidence that the capacitors were in any way not as ordered." (Daffiest' Reply 3.) That the capacitors met these requirements does not foreclose the question as to whether they operated properly. While Vladmir's representative testifies that initial testing showed their capacitors functioned satisfactorily, Vladmir declares that it "discovered serious problems with the construction and performance of the capacitors." Aff. of Bob Alexander (Mar. 4, 2009) (Negligent Representation Resp. ex. D). Given the conflicting testimony and declarations, the Court is unable to determine on summary judgment whether the capacitors operated properly.

Defendants argue that "reliance on representations made in a business or commercial transaction is not justified when the representations take place in an adversarial context," citing *McCamish, Martin, Brown & Loeffler*, 991 S.W.2d at 794. (Negligent Misrepresentation Mot. 6.) In *McCamish, Martin, Brown & Loeffler*, the Texas Supreme Court decided whether a law firm could be liable for negligent misrepresentation by a non-client. The Court stated: "Generally, courts have acknowledged that a third party's reliance on an attorney's representation is not justified when the representation takes place in an adversarial context." *McCamish, Martin, Brown & Loeffler*, 991

S.W.2d at 794. Defendants overstate the application of this statement to sellers and buyers engaged in a business transaction.³

Defendants contend that Plaintiff's reliance on Defendants' representations was unjustified. Plaintiff counters with testimony that Vladmir relied on Defendants' representations when it purchased the capacitors. This issue remains a material issue of fact that cannot be decided on summary judgment.⁴

Based on the aforementioned analysis, the Court grants in part Defendants' motion as it pertains to four of the Plaintiff's claimed representations. The Court denies in part Defendants' motion as it pertains to the alleged representations that Roghair would be in direct contact with the manufacturer and that the capacitors would function properly.

C. *Deceptive Trade Practices Act*

Defendants move the Court to grant summary judgment on Plaintiff's claim for violations of the Texas Deceptive Trade Practices Act, TEX. BUS. & COM. CODE ANN. § 17.41–.63. (Daffiest' Mot. for Partial Summ. J. on Pl.'s Tex. Deceptive Trade Practices Act Count [Docket Entry No. 53] ("DTPA Mot.").) Pacific and Roghair argue that Vladmir can provide no evidence to show of any

---

³In the opinion, the Texas Supreme Court cited 1 RONALD E. MALLEN & JEFFREY M. SMITH, LEGAL MALPRACTICE § 7.10 (4th ed. 1996), quoting the source. The quotation: "[t]he adversary concept is not limited to litigation[; t]he same policy considerations apply to business and commercial transactions" does not apply to general business transactions but to the liability of an attorney who negotiates a business transaction on behalf of a client to a third party. *McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests*, 991 S.W.2d 787, 794 (1999).

⁴Defendants cite *Granader v. McBee*, 23 F.3d 120 (5th Cir. 1994), in support of their motion. In *Granader*, the Fifth Circuit affirmed summary judgment in favor of the defendant on plaintiff's negligent misrepresentations claim based on the plaintiff's inability to demonstrate reliance. *Id.* at 123. The plaintiff had admitted that he could not prove that he acted in reliance of the representation. *Id.* No such admission exists in this case.

misrepresentations that resulted in confusion or misunderstandings under section 17.46(b)(2)[5], that the record does not reflect any false representations that would be actionable under sections 17.46(b)(5)[6] and 17.46(b)(7)[7], and that Defendants could not have known that products made two years after the initiation of the business relationship would fail, which would preclude liability under section 17.46(b)(24)[8]. Plaintiffs again restate the six representations upon which it bases its claim. (DTPA Resp. at 5–6.)

The Texas Deceptive Trade Practices Act prohibits "[f]alse, misleading, or deceptive acts or practices in the conduct of any trade or commerce . . . ." TEX. BUS. COM. CODE ANN. § 17.46(a). To establish a claim for violations of the DTPA, the plaintiff must demonstrate that it is a consumer covered by the Act, that the defendant can be sued under the Act, that the "defendant violated a specific provision of the Act, and that the violation was a producing cause of the claimant's injury." *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 649 (Tex. 1996).

---

[5] "[T]he term 'false, misleading, or deceptive acts or practices' includes, but is not limited to, the following acts: . . . causing confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services . . . ." TEX. BUS. & COM. CODE ANN. § 17.46(b)(2).

[6] "[T]he term 'false, misleading, or deceptive acts or practices' includes, but is not limited to, the following acts: . . . representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he does not . . . ." *Id.* § 17.46(b)(5).

[7] "[T]he term 'false, misleading, or deceptive acts or practices' includes, but is not limited to, the following acts: . . . representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another . . . ." *Id.* § 17.46(b)(7).

[8] "[T]he term 'false, misleading, or deceptive acts or practices' includes, but is not limited to, the following acts: . . . failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed . . . ." *Id.* § 17.46(b)(24).

Defendants do not assert that Vladmir is not a consumer under the DTPA and that the Defendants cannot be sued under the Act. To succeed on their motion for summary judgment, Vladmir must be unable to show that Roghair and Pacific violated specific provisions of the DTPA and that the violation was a producing cause of Vladmir's damages.

It has been established in this order that the following alleged representations do not constitute actionable misrepresentations: that Pacific Parts had factories in China, that Pacific Parts was an agent of the manufacturer, that Roghair had knowledge and experience selling capacitors, and that the capacitors would rival any U.S.-made capacitor. *See supra* Parts B & C. Vladmir is unable to prove its claim for violations of the DTPA based on these representations since they are not false or misleading.

Vladmir can, however, establish violations of the DTPA based on the representations that the capacitors would function properly and that Roghair would be in direct contact with the manufacturer. Plaintiff has provided evidence in its response to demonstrate that an issue of material fact exists as to whether the product worked properly. Such a representation is actionable under section 17.46(b)(5), which allows an actionable claim for a representation that goods have "characteristics, uses, benefits, or quantities which they do not have." *See* TEX. BUS. & COM. CODE ANN. § 17.46(b)(5). The representation is likewise actionable under section 17.46(b)(7), which allows an actionable claim for a representation that goods are of a "particular standard, quality, or grade." *Id.* § 17.46(b)(7). Roghair's alleged comment that he would be in direct contact with the manufacturer is an actionable representation pursuant to section 17.46(b)(24) for "failing to disclose information concerning goods that was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer

would not have entered had the information been disclosed." *Id.* § 17.46(b)(24). Plaintiff has presented affidavits to declare that they would not have entered into the contract with Defendants if they knew this information and have presented a declaration of damages sustained as a result of the defective capacitors. Sirotiak Aff. ¶ 6 (DTPA Resp. ex. G).

The Court grants in part Defendants' motion as it pertains to four of the Plaintiff's claimed representations. The Court denies in part Defendants' motion as it pertains to the alleged representations that Roghair would be in direct contact with the manufacturer and that the capacitors would function properly.

## Conclusion

Defendants' motions for partial summary judgment on Plaintiff's claims of fraud, negligent misrepresentation, and violations of the DTPA are GRANTED IN PART as they pertain to the following alleged representations: that Defendants had factories in China, that Pacific was an agent of the manufacturer, that Roghair had knowledge and experience selling capacitors, and that the capacitors would rival a U.S.-made capacitors. Defendants' motions for partial summary judgment on Plaintiff's claims of fraud, negligent misrepresentation, and violations of the DTPA are DENIED IN PART as they pertain to the following representations: that Roghair would be in direct contact with the manufacturer and that the capacitors would function properly.

It is so ORDERED.

SIGNED this 3rd day of November, 2009.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE